Good morning. I think many of you expected that you would be in Philadelphia this morning and I hope you're thrilled to be in Newark. We are thrilled to have you here. I guess you're not here because Judge Garth and I only sit in courtrooms where our portraits are hung. But we welcome you to the District of New Jersey. We will begin by hearing arguments. Our fifth case and Otas is the last case. We're going to reverse the order and hear Otas before we hear Adan. I don't know if counsel for those cases are in the courtroom. Good. Thank you. Those of us who use yellow pads still are in good shape. You could do that on a computer you know. Yes, once again I'm David Shull. I represent Gaye Sturton. She's the appellant. Below she was a debtor in bankruptcy and she filed an adversary proceeding in which she was playing. I will refer to her as debtor. I would like to reserve three minutes of my argument time for rebuttal if I may. One of the things that I'd like you to focus on is what test and I've looked through and there are various tests that one sees for distinguishing Rule 8B from 8C. Distinguishing affirmative defenses from general defenses. What test would you suggest we use? Well, I think what I would suggest because this case I think shows it. I think if it's something that's going to present an issue that one of the parties might present evidence that they otherwise wouldn't because they don't know that the matter is going to be raised, then I think it's an affirmative defense. What evidence would your client have raised had an affirmative defense per se been pleaded? We would have emphasized that many of the finance charges that we claimed were excessive were padding. In fact, the two that the court found were excessive were both padding. One was the padding of the notary fee, which is only $8. They charged $40. The other was that the broker was taking part of the appraisal fee and charging for that. You mean that you would have contested the fact finding of the lower court? I would have certainly emphasized those issues. Would you have contested the fact finding of the lower court? Yes, I think we would have. We would have emphasized that there should have been fact found on that specific issue. And on those facts, isn't our standard of review clearly erroneous? On fact finding it is, but the court didn't make any findings on those issues. The trial court, as a matter of fact, of course found that it was an affirmative defense, and the court found that it was a matter of faith. What kind of fact finding would you have had the trial court make? A bad faith finding? A finding about the nature of the finance charges that were overcharged. That they were charged in bad faith? Yes. Actually, they were padding. They were traditionally padding. Did you allege that at all in your complaint? Well, we allege many things because we believe many of the finance charges. That isn't my question. My question was, did you allege that? We certainly raised issues about those charges. Yes, we said the notary charge was excessive. We said that the appraisal fee was excessive. Let me rephrase my question. Did you allege that they were excessive because they were charged in bad faith? Not in the complaint, Your Honor, because we didn't know, really, until we got to the trial. And we heard what Mr. Girona, who was the only witness for the defense, said. And then we found out that, yes, indeed, that's what these things were. They were padding. Let me ask you then, picking up on that. If you didn't allege bad faith in the complaint, and you realize the number here is not $100. Everybody talks about it. It's one-half of 1%, which I guess is about $660 in this particular case. It's about $606. $606, okay. What makes you think that they're coming back to you and saying, well, it's under $606 is an affirmative defense? I really want to get my arms around what you think, when you think an affirmative defense is such that it must be under 8C pled. Well, I think it's something, again, that raises an issue that isn't apparent from what the plaintiff has alleged. And in this case, I think that... What does that mean? Does that mean unfair surprise? Or does that mean a logical inference of the allegation of the complaint? Or what? Well, I think it was incumbent on the defendant to say that we believe that all of these charges are not only valid, because they said they're all valid, but we believe that they're all in good faith, they weren't padding, they were nothing that was charged, and therefore, we believe that because of 1605F, that we're entitled to judgment. But as a matter of fact, they said nothing about 1605F, not in their pleadings, not in the pretrial memorandum. They denied it generally, which is okay for a general defense under 8B. The question is, do they have to plead something under 8C? I mean, the things that are listed under 8C are things like, you know, statute of limitations, latches, waiver, whatever. Now, you know, Wright and Miller says that one of the things that you can look to is whether the particular issue is a logical inference of the allegation of the complaint. But also Wright and Miller says that's tautological, and it doesn't seem to really help you discern when something's in a primitive defense or not. It then says, or others say, that okay, you admit the allegations of the complaint, but you say there's something else that helps you deny liability. And that makes some superficial sense, because that's the way it appears that 8C reads. And then the third one is, at least that I can discern, is that there's unfair surprise. You were surprised by the fact that they didn't plead it. How can you possibly be surprised that they might claim at trial that there was under $606 worth of damages here? Well, because we had alleged many, many more issues, and it could have been well over that amount. But if they were going to claim that that was one of their arguments, among other arguments, then they should have put it down. They should have at least argued it in their briefs or mentioned it in the pretrial. They mentioned it nowhere. But you were counsel to the debtor below, is that correct? Yes. And, I mean, if there's anybody that knows this stuff, it's you. I think I do know this stuff. But, you know, there are many, many issues that can be raised in truth-in-lending cases, and we can't foresee every one. Actually, in this case, we thought we had some other arguments that we thought would prevail. Of course, the court ruled against us. On 8 of the 10. Obviously. But the point is, how were you surprised that they didn't say that there is a tolerances for accuracy 1605F defense here? I don't know what to say. When somebody has a defense, you expect them to raise it, somewhere, sometimes, somehow. You don't expect it to be raised sui sponte by the court, which is really what happened here. Let me paraphrase Judge Ambrose's question. He asked, how were you surprised? I'm going to ask, how were you prejudiced? I was prejudiced because I didn't have the opportunity to present evidence that would have related specifically to the nature of those overcharges. The bad faith, which wasn't alleged. Yes, exactly. Well, I think I understand it, sorry. Thank you, Your Honor. And of course, Your Honor, I think you understand that the only case that's ruled on this issue, other than this case, is the Ingee case. I think it's pronounced Ingee. Isn't it dicta in that case? Because there was a question of whether the plaintiff included it in his complaint. Here you're talking about an affirmative defense. Well, I think that's right. I mean, there's a big difference. It's dicta. It is dicta, but it's certainly stated by the court. But the court didn't address this problem. I think I understand your position. I don't think Ingee's necessarily on point. I think it's on point in two ways, Your Honor. First, the court says, I'm just quoting the page. But Ingee deals with what a plaintiff must allege or not allege. Your case is what a defendant must put in as an affirmative defense. I mean, this is just the opposite of Ingee. And Ingee doesn't even begin to discuss why 1605F is an affirmative defense or should be. There's no analysis at all. Well, the court says. And there's a reason for that because it's a plaintiff. Pardon? And there's a reason there's no analysis. They don't have to analyze anything when it's a plaintiff. It's talking about whether the plaintiff must make an allegation. They go on to not only state specifically that it is an affirmative defense, potential affirmative defense. Of course, they say potential because, again, you're right. It's the plaintiff, not the defendant. So the defendant wouldn't. But then the court goes on to state about the nature of 1605. Now, let me understand something. Because you challenge a $57 charge, which the court found to be reasonable, you are seeking a rescission of $132,000 mortgage, $2,000 in damages, and some $19,500 in attorney's fees. Am I correct? Well, it's not. Is that correct? Is that what you are seeking? We're seeking rescission, Your Honor. Well, you're seeking the attorney's fees as well, aren't you? Yes. And you're seeking the $2,000 in damages as well. Yes. And this despite the fact that the reason that the tolerance provision was the Senator Sarban, at least, Sarbanes, did not want to have the kind of higgling and haggling over minimal discrepancies that might result from error. Isn't that so? Anything less than $100 was not to be considered as being a violation.  In some circumstances, Your Honor. However, there's a specific exception. If, in fact, there's a foreclosure brought, then it's only $36. But there's no foreclosure here. There's no foreclosure here. Not yet. We don't deal in hypotheticals. Whatever the effect of a $35 amount would be in another case, it's not relevant to what we're doing here. The point is that Congress did not say that you could never have a small defect and not be able to rescind. If that would have been Congress's policy, they wouldn't have allowed the exception. Basically, 1605F treats something as being accurate for purposes of the Truth in Lending Act, even though it isn't completely one-to-one ratio. And in this case, you have a margin of $606, you said. And the court found that it was $57. The court found it was $57. That is correct. I mean, we challenged, of course, other things, but the court found that there were $57. And that's not on the appeal from that decision. What was the total amount you alleged in your complaint? Did you give an amount that you thought? Well, we said that she hadn't gotten the notices of rescind, which would have, of course, given an amount. But there were a number of charges that we contested. Totaling how much? Aggregating what? It probably would have been over the $600. I know we claimed the title insurance charge was excessive, and there were numerous other charges. There were settlement fee charges. There was charges to charge her just to go out to her house, which she said they didn't really want her to go out to the house. They just happened to come there. There were numerous charges. The loan was really filled up with a large number of charges. The court found only as to that $57. And I think that the only reason that the Enge Court, again, goes on and discusses specifically about the nature of the tolerance, which they do, is because they're pointing out that it isn't just any excess charge that gives rise to the tolerance, that it has to be. In fact, if it is padding, which is exactly what these charges are in the mind of the Enge Court, that would not constitute an offense. I think I've used up my 12 minutes. We'll get you a rebuttal. Thank you. Good morning, Your Honors. Donna Doblich on behalf of Option 1 Mortgage Corporation. Your Honors, to answer the question that you most recently posed to Mr. Schultz, it's indicated on the appendix on page 3 in Judge Carey's initial opinion. Ms. Sturton challenged $2,179 in fees as being improperly excluded from the fining charge. She challenged, in other words, far more than the $660 she would have been required to prove to demonstrate an entitlement to rescission. The Bankruptcy Court methodically went through each of the charges, the evidence regarding each charge, and rejected those, having concluded that those were bona fide and reasonable. At the outset, when they're making then, if they make an allegation that aggregates $2,179, the next thing you have to do is file your answer. And then the question becomes, do you file an answer that lists as an affirmative defense that there is a tolerances for accuracy point, or is that, in effect, I'll call it an element. But what do you mean? It sounds to me like, from what you're saying, is maybe you should have alleged that there was a tolerances for accuracy defense. Your Honor, here the issue of materiality was front and center in the pleadings and in the pretrial statement. In paragraph 9 of her complaint, she characterized the allegation as were there material violations, material disclosure violations. Option 1 denied that, denied materiality, and denied that, in fact, any errors had occurred. In the pretrial statement, listed as one of the legal issues for trial was whether there were material violations of the TILA disclosure requirements. Again, any notion of unfair... So is what you're saying that you would not have known, unless, well, I don't know, maybe to get to trial. When you do, somebody sends you the complaint. Don't you look at the charges and say, look, we dispute these particular charges, there's 10 of them, I guess, in total, and that because we think that they're wrong on the numbers, our number is X, and X is less than one-half of 1%. What analysis do you go through in preparing your answer? Well, the defendant's original position was that all of the 10 charges were properly excluded. They were amounts paid to third parties, they were bona fide and reasonable in all respects, and therefore there was no error. There was a $0 error on the disclosure statement. The evidence at trial, there was some ambiguity as to whether or not there was perhaps a markup on the appraisal fee, and there was testimony that the notary fee, which was not expressly even mentioned in the complaint, had been marked up by $32. At that point, then, it's an argument of the greater subsumes the lesser. Option one's position had been that there was not even a $0 variant. Import of Mr. Scholl's... So there was a general denial as opposed to a need for an affirmative defense. That's right, Your Honor, because the facts and the argument that would be necessary to show that there was a $0 variant, a $0 error, was the same facts, the same argument, that would be used to show there was a $1 error or a $57 error. So then that leads to my question to Mr. Scholl at the outset. What test would you suggest that we use to differentiate a general defense from an affirmative defense? Well, when you look at the list of 8C, the touchstone of what unifies those affirmative defenses is that it's something the defendant would need to introduce new facts, new evidence for argument. Outside the parameters of the facts, evidence, and argument the plaintiff would need to use to introduce to prove his or her case. So, for example, in a simple breach of contract case, it's a general defense to show that there was no consideration, for example, because that's an element of the plaintiff's case. If, on the other hand, the argument is that there was a validly formed contract but it was procured by fraud and the inducement, that is an argument that would require new facts, new evidence, new argument, and therefore Rule 8C requires that it be affirmatively pleaded. Here, again, the facts necessary to show a $0 error are the same facts, the same testimony that would be used to show an error of $1. But you don't even have to show a $0 error, do you? Correct, Your Honor. Do you have a free pass for the first $100 or the first, in this case, $606? It's not a free pass, Your Honor. It was a legislative accommodation made in 1995 in response to a case involving a de minimis $25 fee, and as Judge Garth recognized, it's a very draconian remedy. It's rescission of the loan, it's statutory penalties, it's attorney's fees, and Congress built in a tolerance whereby de minimis violations, intentional or unintentional, the state of mind is not, as Mr. Scholl says, germane to that legal analysis, at the end of the day does not compel the result of rescission. I have a question on the standard of review. You say that we stand in the shoes of the district court and review the bankruptcy court's findings of fact and conclusions of law under a clearly erroneous and plenary standard of review, respectively. But the bankruptcy court and the district court came to opposite conclusions. Aren't we really reviewing, in this case, the conclusion of the district court? Well, Your Honor, it's ultimately a de novo standard of review because under the National Union Fire Insurance case, the question of whether or not it's a general defense under 8b or affirmative defense under 8c is a question of law. Well, is it exclusively a question of law here? It is, Your Honor. But whose legal determination are we reviewing here? It's here on an appeal from the district court, but ultimately it's a review of the bankruptcy court. The district court reversed the bankruptcy court? Correct. So we reverse the bankruptcy court again if we go along with you? Procedurally, you would be affirming the district court. That's what I'm asking. The bankruptcy courts weren't there. In the initial bankruptcy court decision, he found and methodically went through all of the charges, found that she had, in fact, received the disclosure statement and rejected most of the arguments. And what did the second bankruptcy court find? It was the same judge, Judge Carey, on a motion to alter or amend the judgment was one that's waiver argument. Wasn't the second decision after Judge Carey went to Delaware? Or am I getting my cases wrong? There was yet another decision where another bankruptcy court after Judge Carey left quantified the amount in terms of the decision. That's right. Not at issue on this appeal because obviously that's been at the state pending given the district court reversal. I'd also point out that as the district court correctly noted below, Ms. Sturton did not argue on fair prejudice in any way. These are arguments hypothetical of what she would have done, might have done. But as I indicated when I began my argument, she challenged these that were well above and beyond the threshold she needed to show to recover here. The bankruptcy court made findings about refuting the allegations. Thank you. If there are no further questions, I'll rely on my brief. Thank you. Thank you. Rebuttal. Yes, thank you. One other issue I just would note is that not only was it not pleaded as an affirmative defense, but the 1605 issue was not raised at all, not at any point, not even in post-trial submissions. And as a result, the court was really ruling. But if they're saying the number is zero, a general defense would work under 8B. They're saying 100% of the $2,179 were disputing. Well, I understand that. But I think that when you can, of course, plead that in general defense and then also in the alternative, plead in an affirmative defense. An affirmative defense is what you're going to rely on, and that's what they have to rely on here. But my question to you is let's just assume for the moment that, okay, so you plead, she says $2,179. And if somehow they should have said it was actually under $606, therefore it's deemed accurate, how is that? How are you prejudiced, to use Judge Garve's words? I focus on surprise. How are you unfairly surprised? Well, we didn't know that the nature of the charges was an issue. And the nature of the charges is important. If one follows, again, the analysis of the Inge case, would they say if it's padding? It's just as Judge Barry was asking. But how are you unfairly surprised? They're saying it's zero. Should they have made it an affirmative defense then? Well, not if they would have been sustained on that, of course, then they wouldn't have had to plead an affirmative defense. So if it's then a little more than zero, $57, why is that any different than zero? Well, because, again, they can prevail only if 1605F comes into play. And 1605F comes into play only if it's raised and brought into the case. Here, again, it isn't just the case that they're not raising it as an affirmative defense. They didn't raise it, period, so that the court brought it into the spotlight. But you still haven't answered my question as to how are you, clearly an expert in this, how are you surprised unfairly? It's hard to say. If you're saying I'm an expert and nothing surprises me, I guess nothing surprises me. Your reputation precedes you. I mean, take that as a backhanded compliment. Well, I appreciate that, Your Honor. And I was surprised, though. I was surprised when the court raises something that hasn't been argued to it, and I think the court felt that it was unfair and felt that as a result... No, the court was just trying to do the right thing, saying, wait a minute, this is de minimis. I mean, why are we here? I mean, the court's just trying to be very practical about it. Well, not the Bankruptcy Court in motion for reconsideration. I mean, they had the same considerations, and yet the court ruled in our favor. So that's the bottom line of the Bankruptcy Court decision, and I think the court was exercising its discretion to say, well, you know, I raised this sua sponte, and maybe I shouldn't have done that, and giving us a chance to come back to the Bankruptcy Court and say... And that's why I keep asking the questions I ask about 8b and 8c, because I think there needs to be some clarification in this area. All right. I appreciate that, Your Honor. Thank you. Well, thank you. The case is very well argued, and we will take it under advised law. We'll now hear argument in Allen v. Vaughn.